```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

KIMBERLY VANBUREN,

               Plaintiff,          09-CV-6233L

v.                                           **DECISION**
                                           **and ORDER**
MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____

## **INTRODUCTION**

Plaintiff Kimberly VanBuren ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act ("the Act"), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), claiming that the Commissioner incorrectly denied Plaintiff's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Marilyn D. Zahm, which denied Plaintiff's DIB and SSI benefits, was erroneous and contrary to law as it was not supported by substantial evidence within the record.

Now before the Court is the Commissioner's motion for judgment on the pleadings and Plaintiff's cross-motion for a judgment on the pleadings, both pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g). For the reasons stated

below, Plaintiff's cross-motion for a judgment on the Pleadings is denied, and the ALJ's decision is therefore affirmed.

**BACKGROUND**

On March 12, 2004, at the time a 48 year-old woman who was currently unemployed, filed an application for Disability Insurance Benefits under Title II of the Act, and also an application for Supplemental Security Income under Title XVI of the Act. Plaintiff claims an alleged onset date of May 18, 1998.[1] Plaintiff's applications to the Commissioner were subsequently denied on October 6, 2004, and Plaintiff then moved for a hearing before ALJ Zahm, which was held on June 22, 2007. (R. 16, 698-746)[2]. In a decision dated August 20, 2007, the ALJ determined that the Plaintiff was not disabled. The ALJ's decision became final when the Social Security Appeals Council denied her appeal on March 11, 2009. On May 11, 2009, Plaintiff filed this action pursuant to §405 (g) of the Act for review of the final decision of the Commissioner.

---

[1] In Plaintiff's Memorandum of Law, she alleges an amended on-set date of April 2004. However, this is the only mention of the amended date within the record, therefore, Plaintiff's on-set date for this application will be what was specified within her application (and utilized by the ALJ), May 18, 1998.

[2] Citations to "R." refer to the Record of the Administrative Proceedings

**DISCUSSION**

I.  **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Disability Insurance Benefits and Supplemental Security Income. Additionally, the section directs that when considering such claims, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex.1983) (citation omitted). Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

**II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence within the record and is proper as a matter of law**

In the ALJ's decision, she found that Plaintiff was not disabled within the meaning of the Act. A disability is defined within 42 U.S.C. § 423(d) to be the:

> *"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."* 42 U.S.C. § 423(d) (1991).

In determining the threshold question of Plaintiff's disability, the ALJ adhered to the Administration's 5-step sequential analysis for evaluating assignments of disability benefits.[3] See 20 C.F.R. § 404.1520. Having gone through the evaluation process, the ALJ found (1) Plaintiff was not currently

---

[3] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity ("RFC") to perform his past work; and (5) determine whether the claimant can perform other work. See id.

engaged in substantial gainful activity, and has not since her alleged onset date of May 18, 1998; (2) Plaintiff had suffered from the following "severe impairments": obesity, back disorder and right knee disorder; (Plaintiff's impairments did not meet or equal those listed within 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 416.920(d)); (4) Plaintiff was not able to return to her past relevant work as a chocolate production machine operator; (5) Considering Plaintiff's residual functional capacity, as well as other qualifications such as age, education, and work experience, there exists other jobs within the national economy that Plaintiff can perform. (R. 30-31).

### A. **The substantial medical evidence within the record supports the ALJ's decision that Plaintiff was not disabled**

The medical evidence within the record shows that Plaintiff was initially injured at work in May of 1998. She was seen at Oswego Hospital on May 19, 1998 citing complaints of pain in her tail bone that radiated down her right leg. After Plaintiff was discharged from the hospital, she attended physical therapy where she was eventually discharged after not making significant gains in her condition as well as the expiration of her prescription. (R. 260).

At an orthopedic examination by Dr. Harold Weichert, he assessed the Plaintiff with right lumbar radicular syndrome, which had improved. (R. 22, 219). On September 30, 1998, Plaintiff was

seen again after prior visits with Dr. Weichert. Medical notes state that the doctor "got down on his knees and begged [Plaintiff] to lose weight." (R. 220). The doctor also noted some dietary problems that have proven to be harmful to her. After additional visits with Dr. Weichert, Plaintiff was directed to continue with her weight loss. During a return visit on February 7, 2001, the doctor noted Plaintiff's discontinuance of treatment due to her relocation to New York City. (R. 24, 230).

Daniel J. Glauber, a Vocational Rehabilitation Counselor in Syracuse, saw the Plaintiff for a functional capacity evaluation on December 1, 1999. Based on the results of this evaluation, Plaintiff was found capable of sedentary work. (R. 23, 664).

Plaintiff was seen by Dr. Joseph A. Cantania, a pain management specialist, who assessed Plaintiff with lumbar radiculopathy. Plaintiff was offered, but declined, low-dose anti-depressants. Dr. Cantania further opined that Plaintiff would be amenable to nerve block therapy after obtaining an MRI. (R. 267).

On August 8, 2001, Nurse Practitioner Victoria Coulter (on behalf of Dr. Robert Tiso) received authorization for a lumbar MRI and epidural injections, however, the MRI was not able to be performed due to Plaintiff's weight. (R. 284-285). Plaintiff did however proceed with the epidural injections on August 17, October 1, and November 12 of 2001. (R. 281-83). Plaintiff saw Dr. Tiso

on December 26, 2001 and stated that she had "60-70% pain reduction from series of three transforaminals." (R. 280).

Linda Erich of the Pain Center saw the Plaintiff on January 23, 2002, where Plaintiff's status was reported as improving. (R. 279).

In February of 2004, Plaintiff still was not able to have an MRI conducted due to her weight. Medical records from Strong Health Culver Medical Center stated that Plaintiff fell while climbing a flight of stairs and hurt her knee. (R. 513). During a follow-up visit in March 2004, Plaintiff claimed her knee was feeling better and that physical therapy helped. (R. 515). Plaintiff was also scheduled to see the Pain Clinic later in the week. Id.

Plaintiff was seen at the Pain Clinic on March 26, 2004, by Dr. David Moorthi. The doctor stated that the epidurals that have been used previously assisted Plaintiff in her pain management. Dr. Moorthi recommended that Plaintiff receive an MRI on her thoratic and lumbar spine, and right knee. He also prescribed continuation of the epidural injections since Plaintiff previously responded positively to this specific treatment. (R. 312).

Dr. Stephen Basler examined the Plaintiff on March 26, 2004. The record shows that Plaintiff's activities consist of reading, watching TV, small craft projects, and occasional swimming. (R. 314-15). Dr. Basler diagnosed Plaintiff with a pain disorder,

associated with both psychological factors and a general medical condition; adjustment disorder, unspecified; and substance abuse in partial remission.

An MRI was finally performed on the Plaintiff's lumbar spine on March 31, 2004. (R. 293). The results showed degenerative disc disease and probable facet arthropathy with small protrusion causing mild foraminal encroachment. An MRI of Plaintiff's thoratic spine showed degenerative changed near the cerviovothoratic junction most likely secondary to degenerative disease. (R. 293-94).

With the MRI completed, Plaintiff went back to the Pain Center on April 6, 2004 and underwent a lumbar epidural. On May 19, 2004 Plaintiff underwent a lumbar epidural nerve root injection. Plaintiff said she improved with the blocks and water therapy. (R. 308-310A).

On June 21, 2004, Plaintiff was seen by Dr. Christine Ransom, at the request of the Administration in connection with Plaintiff's disability claim. Dr. Ransom noted that Plaintiff has been free from substance abuse for ten years, and the doctor diagnosed Plaintiff with major depressive disorder, currently at the mild to moderate level. (R. 317-320).

George Sirotenko, a doctor of Osteopathy, examined Plaintiff on June 21, 2004, also on the request of the Administration. Dr. Sirotenko opined that Plaintiff should avoid kneeling,

squatting and bending, stairs, inclines or ladders on a repetitive basis. Plaintiff should also avoid repetitive forward flexion, extension or rotation. She would be able to push, pull, and lift objects of a moderate degree of weight on an intermittent basis, however she should avoid lifting objects over her head to prevent axial load. And further, Plaintiff does not require the use of an assistive or supportive device. (R. 321-329).

State Agency Review Physician, Dr. Janis Dale, opined that Plaintiff has the residual functioning capacity ("RFC") for sedentary work. (R. 330-31). Additionally, a state agency review analyst had conducted an RFC assessment, however, the ALJ properly held that it will not be given any weight since it was not completed by a qualified medical doctor. (R. 350-55).

On September 28, 2004, the Pain Center noted Plaintiff had undergone nerve root injections that have helped with her pain. (R. 504). Treatment notes also indicate that Plaintiff underwent gastric bypass surgery on April 29, 2005 at Highland Hospital. (R. 535).

On May 2, 2006, Plaintiff was seen at the Pain Center and nurse practitioner Janet Pennella-Vaughan reported that Plaintiff claimed a 3-4 month period of decreased pain after the nerve root injections. (R. 452). A follow-up visit to the Pain Center on October 6, 2006, Plaintiff reported that she was doing

"significantly better overall" since her past two injections. (R. 471-472).

When the ALJ had assessed all of the medical opinions in regard to Plaintiff's impairments, she gave "great weight to the functional capacity evaluation [1999 evaluation] as it is a measure of what the claimant can actually do." (R. 29). It was proper for the ALJ to give this evaluation great weight since it was not found to contradict any of the multiple consultative examiner's opinions. It is well established within the Second Circuit that a consultive physician's opinion may serve as substantial evidence in support of an ALJ's finding in determining a claim of disability. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

The ALJ also correctly found that Dr. Johannessohn's residual functional capacity evaluation of May 2004, should not be afforded controlling weight. (R. 30). Though Dr. Johannessohn was Plaintiff's treating physician, it is evident that Dr. Johannessohn's opinion is contradicted by the substantial medical evidence within the record and thus not entitled to controlling weight. 20 C.F.R. §404.1527(d). Specifically, in support of her decision, the ALJ stated that Plaintiff "had better control of pain in 2004, after the injections, then in 1999, when she had the functional capacity evaluation." (R. 30).

The ALJ also stated that the medical record did not provide any evidence of Plaintiff's medical deterioration, however, the

evidence does show Plaintiff's improvement.  The ALJ is allowed to "Rely not only on what the record says but also on what it does not say." see *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). Therefore, although there is no indication of Plaintiff's deterioration, the record does not reveal her improvement, and therefore the ALJ was correct in concluding that Plaintiff did not have any medical deterioration.

Due to the number of medical procedures Plaintiff underwent, the result was alleviation of her pain.  When Plaintiff benefits from medical procedures or medications that relieve her pain, (and therefore provide her with an opportunity to obtain employment) a conclusion of not disabled is appropriate.  The Second Circuit has held that a "remediable condition is not disabling." *Duma* at 1553. Therefore, since the medical record supports the conclusion that Plaintiff's condition is controlled with medications and pain relieving procedures, a finding of disabled is appropriate.

**B. The ALJ properly assessed Plaintiff's credibility**

Although the ALJ does not throughly discuss the Plaintiff's credibility in relation Plaintiff's subjective complaints, there is substantial evidence within the record that questions the Plaintiff's credibility.  In the ALJ's decision, she properly

discussed the additional factors that must be considered when assessing Plaintiff's credibility of her statements.[4]

Plaintiff's subjective complaints are not consistent with the medical evidence nor with the additional factors the ALJ was required to consider. Despite her subjective complaints, Plaintiff continued to socialize with her friends, that included going out to dinner or hosting friends at her home; sewing; shopping; traveling; working out at an athletic club; and swimming (both as therapy and exercise). (R. 228, 229, 741, 473, 708-10, 712). As the defendant stated, evidence that the Plaintiff is able to engage in many and varied activities, despite allegations of severe pain is supportive of a conclusion that her alleged symptoms are not disabling." *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980).

Substantial evidence within the record supports the ALJ's conclusion that "[t]he claimant's complaints of pain and limitations are out of proportion to the objective findings, the reports of her treating sources, and the functional capacity

---

[4] Pursuant to Social Security Ruling 96-7p, in addition to objective medical evidence, the ALJ must also consider: (1)The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

evaluation she underwent in December of 1999." These facts therefore do not provide Plaintiff with a determination of being disabled within the meaning of the Act. (R. 29).

    C. **<u>Substantial evidence within the record supports the ALJ's decision that Plaintiff retained the RFC to perform sedentary levels of work within the economy and was not disabled with the meaning of the Act</u>**

While evaluating Plaintiff's residual functioning capacity ("RFC"), the ALJ properly considered whether Plaintiff meets or medically equals any impairments listed within Appendix 1. The ALJ concluded that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (R. 19). She also states that there is no objective medical reports or tests that approach any of the requisite levels of the Listing of Impairments.

Since there is no evidence to support that Plaintiff even remotely meets any of the Listings within Appendix 1 (specifically Listing 1.00 - Musculoskeletal System), the ALJ was correct in concluding that Plaintiff does not have a Listed Impairment that would consider the Plaintiff disabled. (R. 19).

In continuing the determination of Plaintiff's RFC, the ALJ took into consideration various medical opinions, including the 1999 functional capacity evaluation. Although the record contains medical evidence that Plaintiff is not able to return to her past work as a chocolate production machine operator (heavy level of

exertion), she does retain the RFC to perform a full range of sedentary work.

Since the Plaintiff was unable to show further limitation of her current RFC through medical evidence, the ALJ was correct in determining that Plaintiff now has the ability, despite her impairments, to complete a full range of sedentary work.  see 20 C.F.R. §§ 404.1545 (a)(3) and 416.945(a)(3).

Plaintiff (who was 47 years-old at the time of the disability onset date) is considered a younger individual, which is defined as a person within the age of 45-49, which further supports the ALJ's decision that Plaintiff has the capability to transition into sedentary work.  20 C.F.R. §§ 404.1563 and 416.963.

### D. **Considering Plaintiff's age, education, work experience, and RFC, the ALJ properly held that there are jobs within the local and national economy that Plaintiff can perform**

In determining whether there are other jobs within the economy that Plaintiff may perform, the ALJ enlisted the help of a Vocational Expert ("VE") during the Administrative proceeding. However, within the ALJ's decision, she did not cite any of the VE's testimony.  Due to the fact the ALJ had discredited Plaintiff's subjective complaints, the hypothetical that was posed to the VE about Plaintiff needing to have breaks throughout the day was unsubstantiated.  The only evidence within the record that indicates Plaintiff's need to lay down due to her pain was in Plaintiff's own testimony in which she stated that when she was in

pain, she normally "switched positions" which included laying down. (R. 722).

Since this hypothetical (including the unsubstantiated requirement of the need for her to lay down) was not based on substantial evidence, the ALJ was not required to rely on the VE's response to the specific hypothetical when making her determination of Plaintiff's disability. see *Stenoski v. Astrue*, 2009 WL 6055830, at *11 (N.D.N.Y. July 23, 2009). I find that the ALJ was correct in implementing the Medical-Vocational Grids in determining Plaintiff's disability status. (R. 30-31).

In using the Guidelines to determine whether Plaintiff could make a successful adjustment to other work in the national economy, the ALJ correctly considered the Plaintiff's age, education, work experience, and RFC for a full range of sedentary work which corresponded with Medical Vocational Rule 201.21. 20 C.F.R. Part 404, Subpart P, App. 2.

Accordingly, I find that the ALJ's decision that Plaintiff was not qualified to receive Supplemental Security Income is supported by substantial evidence in the record. Moreover, because Plaintiff was not able to prove a disability existed on or before her insured status termination date of December 31, 2003, she is therefore additionally denied Disability Insurance Benefits.

## **CONCLUSION**

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          s/Michael A. Telesca
                                            MICHAEL A. TELESCA
                                        United States District Judge

Dated:    Rochester, New York
            August 13, 2010